# EXHIBIT A

Alexander M. Sugzda (asugzda@cohenziffer.com)
COHEN ZIFFER FRENCHMAN & MCKENNA LLP
1325 Avenue of the Americas
New York, New York 10019

*Attorneys for Plaintiff Plaza Home Mortgage, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PLAZA HOME MORTGAGE, INC.,<br><br>      Plaintiff,<br><br>    v.<br><br>ASSOCIATION OF CERTIFIED MORTGAGE ORIGINATORS RISK RETENTION GROUP, INC., CASTLELINE RISK & INSURANCE SERVICES, LLC, AND ALTISOURCE PORTFOLIO SOLUTIONS, INC.,<br><br>      Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Plaza Home Mortgage, Inc. ("Plaza"), by and through its undersigned counsel, as and for its Complaint against Defendants Association of Certified Mortgage Originators Risk Retention Group, Inc. (the "RRG"), CastleLine Risk & Insurance Services, LLC ("CastleLine"), and Altisource Portfolio Solutions, Inc. ("Altisource"), alleges as follows:

**PRELIMINARY STATEMENT**

1. This diversity action for breach of contract, declaratory relief, breach of the implied covenant of good faith and fair dealing, liability under New York General Business Law § 349, and tortious interference with contract arises out of Defendants' refusal to provide coverage for 21 claims (the "Claims") Plaintiff submitted under a series of Certified Loan Insurance policies issued by the RRG from, at least, November 1, 2020 to October 31, 2021 (Policy Number

CL00020A0027), and from November 1, 2021 to April 30, 2023 (Policy Number CL00021A0027) (collectively, the "Policies").

2. Plaza is a third-party wholesale and correspondent mortgage lender that originates and purchases loans, and then sells mortgage loans to investors like Fannie Mae and Freddie Mac.

3. The Policies insured Plaza against, among other things, losses stemming from underwriting errors for mortgage loans it had sold or planned to sell to investors.

4. Plaza has purchased loan insurance coverage from the RRG since at least 2016.

5. The RRG, CastleLine, and Altisource are corporate affiliates, all subsidiaries of common parent non-party Altisource Portfolio Solutions S.A. ("Altisource Parent"). CastleLine issued the Policies on behalf of the RRG and handles claims on its behalf. Altisource is the 100% owner and managing member of CastleLine.

6. Plaza and CastleLine, over the years, have established a process for handling potential or actual claims under its Certified Loan Insurance policies.

7. As described in greater detail within, when a repurchase demand is received for a given loan, Plaza would work with the involved parties to address the demand, and if the demand presented a potential claim under the Policies, the potential claim would be added to a spreadsheet shared with CastleLine and discussed on a biweekly call. If the loan is repurchased, the spreadsheet is updated with bids and other information related to the resale of the loan and is further discussed with CastleLine. After the loan is sold, Plaza would provide a proof of loss to CastleLine.

8. Upon information and belief, this process has resulted in coverage for approximately 63 claims prior to the Claims at issue.

9. Beginning in 2020, Plaza underwrote and then sold the 21 mortgages at issue to investors.

10. After Plaza or the investor discovered a mortgage underwriting error (for example, improper verification of the borrower's income), Plaza repurchased each of the mortgages.

11. Plaza then sold—or plans on selling—the mortgage at a discount and then planned on looking to its Certified Loan Insurance to recoup its losses—the very purpose of this insurance.

12. As the claims arose, Plaza submitted them to CastleLine in the ordinary course of business pursuant to the process detailed above.

13. Rather than respond as it had previously done for years, CastleLine abruptly informed Plaza that all Claims it had submitted were denied, *including several claims Plaza had not even made yet.*

14. CastleLine based its denials primarily on an argument that the parties' claims handling process apparently violated several conditions of the Policies.

15. Plaintiff has pointed the RRG and CastleLine to this prior course of conduct. The RRG has nevertheless refused to provide Plaza with the coverage for which it paid.

16. CastleLine, as the claims handler for the Policies, and Altisource, as the managing member of CastleLine, were well aware of the Policies issued by the RRG to Plaza and caused the RRG to abandon its contractual obligations to Plaza and refuse to pay the covered Claims.

17. Plaza has suffered a significant loss and thus asks this Court (i) to force the RRG to honor its coverage obligations under the Policies it sold and to make Plaza—its insured—whole, and (ii) to hold CastleLine and Altisource accountable for interfering with the contracts between Plaza and the RRG.

## PARTIES

18. Plaza is a corporation formed under the laws of California with its principal place of business in California.

3

19. Upon information and belief, the RRG is a corporation formed under the laws of Nevada with its principal place of business in Nevada.

20. Upon information and belief, CastleLine is a limited liability company formed under the laws of Nevada with its principal place of business in Georgia. Upon information and belief, the sole member of CastleLine is Altisource.

21. Upon information and belief, Altisource is a corporation formed under the laws of Delaware with its principal place of business in Georgia.

## JURISDICTION & VENUE

22. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties to this action and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

23. Because the RRG has consented to the jurisdiction of this Court through a forum-selection clause, the Court has personal jurisdiction over these claims. The Declarations section of the Policies contain a "Choice of Law & Jurisdiction" provision, which provides: "Each party agrees to submit to the exclusive jurisdiction of any competent court within the Southern District of New York." The Policies further provide in the "Choice of Law / Legal Proceedings" section that: "[I]t is hereby agreed that any proceedings shall be determined by the Courts of the jurisdiction set out in the Declarations."

24. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

I. **The Policies**

25. In exchange for the payment of substantial premiums to cover the type of loss at issue here, the RRG issued the Policies (through CastleLine) to Plaza.

4

26. The Policies contain a footer on each page that the language is copyrighted by Altisource.

27. The Policies each provide a per Mortgage Loan limit of liability of "25% of the Original Principal Balance of any Mortgage Loan up to a maximum of $125,000" and a $6,000,000 aggregate limit of liability.

28. As relevant here, the Policies each provide a per-Claim self-insured retention of 15% of Loss for Scratch and Dent Loss.

29. The Policies' insuring agreement states:

We agree to indemnify the Insured for Foreclosure Loss, Scratch and Dent Loss and Short Sale Loss because of a Claim that is directly caused by a Mortgage Underwriting Defect, provided that:

1.1. the Mortgage Underwriting Defect is committed during the Policy Period, and

1.2. the Mortgage Underwriting Defect is on a Mortgage Loan that has undergone Certified Loan Underwriting during the Policy Period, and

1.3. the Mortgage Loan is listed on the Schedule of Mortgage Loans, and

1.4. the Claim was made against an Insured and reported in writing during the Reporting Window to the party identified in Item 13 of the Declarations, and

1.5. the Named Insured is a Member of the Association of Certified Originators, Inc.

30. Capitalized terms are defined in the Policies. The Policy defines "We/Us/Our" as the RRG.

31. "Insured" (as well as "You/Your") means the "Named Insured," "the entity identified in Item 2 of the Declarations," which is Plaza.

32. The Policies define "Loss" as "a Foreclosure Loss, Scratch and Dent Loss, or Short Sale Loss."

33. As relevant to the Claims at issue, "Scratch and Dent Loss" is:

[T]he lesser of the sum shown as the Per Loan Limit of Liability [of 25% of the Original Principal Balance of any Mortgage Loan up to a maximum of $125,000] and the deficit associated with the Mortgage Loan following a Scratch and Dent Loan Sale by You, calculated as the monetary difference between . . . the unpaid

5

principal balance; and . . . any amounts recovered through a Scratch and Dent Loan Sale.

34. A "Scratch and Dent Loan Sale" is "a sale by the Insured at a discounted rate that maximizes the value of the Mortgage Loan and is the most favorable of at least three solicitations for bids from Recognized Counter Parties."

35. A "Claim" means either "a written Repurchase Demand on a Mortgage Loan subject to this Policy; or . . . discovery by the Insured of an Unsaleable Loan."

36. A "Repurchase Demand" is "a request, suit, indemnity provision or other Enforcement, pursuant to a Mortgage Loan sale, purchase or securitization agreement between the Insured and a Mortgage Purchaser to provide indemnity for Loss, including repurchase of a Mortgage Loan, directly caused by a Mortgage Underwriting Defect."

37. An "Unsaleable Loan" is "a Mortgage Loan which cannot be sold to a Mortgage Purchaser solely as a direct result of a Mortgage Underwriting Defect as determined by such Mortgage Purchaser."

38. The Policies define "Mortgage Underwriting Defect" as:

[A] Fraud or Mortgage Underwriting error or omission that causes the Mortgage Loan to be non-compliant with the applicable Underwriting Guidelines, provided that . . . the Mortgage Purchaser would not have purchased the Mortgage Loan if it had known of the Fraud, error or omission at the time of that purchase, and . . . the Fraud must not have been committed, directed, allowed, known or reasonably should have been known by any principal, officer or director of an Insured.

39. "Fraud" is defined as "the misrepresentation or omission of information in an Application."

40. "Mortgage Underwriting" means "the process by which a prospective Mortgage Loan is reviewed and analyzed by the Insured or its authorized designee to determine if it is in compliance with the Underwriting Guidelines."

6

41.     A "Mortgage Loan" is "the indebtedness of a Mortgagor that is secured by a first priority lien and security interest in a Property that is the subject of the Mortgage Loan Note that is either sold by an Insured to a Mortgage Purchaser or is intended to be sold to a particular Mortgage Purchaser."

42.     The "Mortgage Loan Note" is "all documents and instruments, including but not limited to a note, loan agreement, mortgage or deed of trust, which evidence financial and other obligations of a Mortgagor for a Mortgage Loan and gives the Insured an unsubordinated, first priority interest in Property as security for a Mortgage Loan."

43.     "Certified Loan Underwriting" is defined as "the process by which CastleLine . . . or its authorized designee, reviews and approves Mortgage Loans to determine whether they are qualified to be subject to this Policy."

44.     The Policies also have conditions that have been raised by CastleLine in denying coverage for the Claims. In the Loss Conditions section of the Policies, the Policies provide: "The following are conditions precedent which must be satisfied before We are liable to make any payment under this Policy . . . ."

45.     The Loss Condition contained in Section 4.3.5 states that "Insureds shall do nothing after a Claim has been made or an Insured becomes aware of a Repurchase Demand or Unsaleable Loan or circumstance that an Insured knows or reasonably should know will likely give rise to a claim under this Policy, to admit any liability, or to prejudice such rights or causes of action to which We may become subrogated upon payment of any loss hereunder."

46.     The Loss Condition contained in Section 4.3.6 states that "[a]s soon as practicable, the Insured shall provide proof of Loss by providing the details set out in Appendix 2 to the party listed in Item 13 of the Declarations."

47.     The "Other Insurance or Indemnity" provision contained in Section 4.24 states:

7

It is agreed that in the event of loss, this Policy, insofar as it covers any loss that is also covered in whole or in part by other insurance or indemnity, shall be excess to such other insurance or indemnity, including but not limited to title insurance, default insurance, mortgage insurance, warranty or guarantee insurance, hazard insurance, flood insurance, professional liability insurance, or any errors or omissions insurance or fraud insurance other than that provided by this Policy, regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or on any other basis.

48. The "Voluntary Payments and Settlements" provision contained in Section 4.26 states that "[i]t is a condition precedent of coverage that Our prior written consent be obtained for payment or settlement of any Claim. No Insured may incur any expense, make any payments, enter into any settlements, assume any obligation or waive any right of recovery or limitation of loss with respect to a Claim without Our prior written consent."

49. The "Waiver" provision contained in Section 4.27 states that "[n]o waiver of performance or obligation of any party to this Policy shall be binding unless in writing signed by the party waiving such performance or obligation. No waiver shall constitute a continuous waiver or waiver of future performance or obligation unless specifically provided for in the written waiver by the waiving party."

50. The Policies have choice of law clauses stating that "[t]his Insurance shall be governed by and construed in accordance with the law of the State of New York."

## II. Plaza and CastleLine's Prior Course of Conduct

51. Throughout their relationship, Plaza and CastleLine have handled claims or potential claims in the same manner.

52. Plaza formerly used Altisource's automated workflow product, Trelix, to assist in the loan underwriting process, and CastleLine would use Trelix to evaluate coverage for any claims subsequently made by Plaza under the policies issued by the RRG.

8

53. Whenever Plaza received a notice of defect or Repurchase Demand regarding a loan it had sold, it would input that information into a spreadsheet of actual or potential claims (the "Claims Summary Spreadsheet").

54. As the status of the Repurchase Demand or defect changed, Plaza updated the Claims Summary Spreadsheet.

55. Every two weeks, CastleLine and Plaza would hold a call to discuss the claims.

56. The morning of every call, Plaza would send CastleLine an updated version of the Claims Summary Spreadsheet.

57. After a mortgage is repurchased through a Scratch and Dent Sale, Plaintiff would then formally file a proof of Loss.

58. At no point during years of submission of claims starting in at least 2016 did CastleLine ever assert that this process failed to comply with the Policies' conditions.

59. Between 2016 and 2023, CastleLine (on behalf of the RRG) provided coverage to Plaza for approximately 63 claims submitted pursuant to the above process.

### III. The 21 Claims at Issue

60. The 21 Claims in dispute each involve a single mortgage loan Plaza has repurchased from a Mortgage Purchaser after discovery of a defect and has either sold or intends to sell at a Scratch and Dent Loan Sale.

61. Plaza followed the same process with respect to these Claims as it had with all prior claims: it added them to the Claim Summary Spreadsheet and either discussed or was prepared to discuss the Claims with CastleLine at the regularly scheduled conference calls.

9

62. However, unlike with prior claims, CastleLine refused to provide coverage: on October 16, 2023 and October 17, 2023, CastleLine sent Plaintiff 21 nearly-identical letters (on Altisource letterhead) denying coverage for each of the Claims (the "Denial Letters").

63. Upon information and belief, Altisource, as the managing member of CastleLine, caused CastleLine to issue the Denial Letters.

64. Remarkably, CastleLine/Altisource sent Denial Letters for multiple Claims that Plaza had not yet even submitted for coverage.

65. In every letter, CastleLine/Altisource cited the following reasons for denial:

   a. Plaza paying the repurchase demand without CastleLine's "prior written consent" and without giving Plaza an opportunity to "investigate the Claim or take action with respect to the Claim" in violation of Sections 4.26 and 4.3.5 of the Policies,

   b. Not providing a proof of Loss in violation of Section 4.3.6, and

   c. Not providing "any evidence of its efforts to enforce its insurance and indemnification rights against other carriers and indemnitors" in violation of Section 4.24.

66. In addition, for seven of the claims, CastleLine/Altisource contended that the documents do not demonstrate evidence of a Mortgage Underwriting Defect because the loans did not satisfy certain investor requirements.

67. On December 21, 2023, Plaza requested formal reconsideration of the Claims, noted the sudden departure from Plaza and CastleLine's previous course of conduct in the claim process, explained that CastleLine's denials were without regard to the facts of each Claim, and highlighted CastleLine and the RRG's potential bad faith liability.

68. On February 2, 2024, CastleLine responded (again on Altisource letterhead), citing both Policies (as well as policy number CL0019A0027) and reaffirming the positions taken in the Denial Letters.

69. CastleLine/Altisource did not dispute Plaza's recitation of the well-established course of conduct between the parties, it merely pointed to a non-waiver provision of the Policies and claimed that any waiver of the conditions it claimed Plaza had breached must be in writing.

70. CastleLine/Altisource's positions are without merit. As it has for years, Plaza provided all information necessary within a reasonable timeframe for CastleLine to review and pay the Claims for which it had sought coverage at the time of the Denial Letters and was willing and able to do so for any of the Claims that had not been presented yet for which it would have sought coverage. All Claims for which Plaza has sought or will seek coverage satisfy the Policies' insuring agreement, the conditions that CastleLine argues have been breached have either been satisfied or waived, and the non-waiver provision does not apply to change that outcome.

71. No reasonable insurer would be expected to take the position CastleLine has taken on behalf of the RRG, deciding out of the blue that a course of conduct that the parties followed for years and resulted in coverage for past claims instead violates several provisions of the Policies.

72. Through CastleLine's erroneous denials of Plaza's Claims, the RRG has breached its contractual obligations under the Policies.

73. Upon information and belief, CastleLine is in financial distress, and the desire to retain funds rather than agreeing to provide coverage on behalf of its affiliate, the RRG, may have motivated its and Altisource's change of position from providing coverage for the Claims in line with the prior course of conduct with Plaza, to denying all the Claims.

11

## FIRST CAUSE OF ACTION
### (Breach of Contract – Against the RRG)

74. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs, specifically paragraphs 25–62, 68, 70, and 72 as if fully set forth herein.

75. The Policies constitute valid and enforceable contracts between Plaza and the RRG.

76. Plaza has complied with all obligations under the Policies, or the obligations under the Policies have been waived, pursuant to the parties' years-long course of conduct.

77. As described above, Plaza has sustained Loss under the terms of the Policies and is thus entitled to coverage.

78. Under the terms of the Policies, the RRG must pay "25% of the Original Principal Balance of any Mortgage Loan up to a maximum of $125,000 in Loss per Mortgage Loan."

79. The RRG has not paid Plaza any amounts in connection with any of the Claims described above. By failing to provide coverage, the RRG has breached the terms of the Policies.

80. As a direct, proximate, and legal result of the RRG's breach of contract, which is continuing as of the date of this Complaint, Plaza suffered damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment – Against the RRG)

81. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

82. Pursuant to the Policies, the RRG is obligated to pay, up to the limit of liability, for a claim that is covered by the Policies' insuring agreement and is not otherwise excluded from coverage.

83. As detailed above, the facts of the claim come within the Policies' insuring agreement and coverage is not otherwise excluded.

84. The RRG disputes its legal obligation to pay Plaza's claims.

85. Pursuant to 28 U.S.C. § 2201, Plaza is entitled to a declaration by this Court of the RRG's obligations under its Policies.

86. An actionable and justiciable controversy exists between Plaza and the RRG concerning the proper construction of the Policies, any waiver thereto, and the rights and obligations of the parties thereto, with respect to the claims at issue.

87. Pursuant to 28 U.S.C. § 2201, this Court should enter a declaratory judgment in favor of Plaza and against the RRG, declaring that there is coverage available for Plaza's Claims under the Policies, and, pursuant to 28 U.S.C. § 2202, any other relief this Court deems proper. Such a declaration would resolve the current controversy between Plaza and the RRG.

### THIRD CAUSE OF ACTION
**(Breach of the Implied Covenant of Good Faith and Fair Dealing – Against all Defendants)**

88. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs, specifically paragraphs 64–66, 69, 71, and 73, as if fully set forth herein.

89. The Policies provide that they are to be governed by and construed in accordance with the laws of the State of New York.

90. Under New York law, the Policies contain an implied covenant of good faith and fair dealing.

91. CastleLine/Altisource, on behalf of the RRG, previously provided coverage to Plaza for claims submitted pursuant to the process that had been followed for several years. However, in denying coverage for the Claims at issue, CastleLine/Altisource has abruptly, and

13

with no explanation, taken the position that the submission process violates several conditions of the Policies that allow it to deny coverage for the Claims.

92. Even after Plaza highlighted the parties' years-long course of conduct, CastleLine/Altisource, on behalf of the RRG, has continued to put forth baseless reasons why the claims are not covered that contradict it, relying on legally insufficient arguments.

93. Through these actions, the RRG and/or CastleLine/Altisource has breached the Policies' implied covenants of good faith and fair dealing.

94. Plaza has been damaged by Defendants' breaches of the implied covenant of good faith and fair dealing in an amount to be determined at trial.

95. Plaza is entitled to consequential damages flowing from Defendants' violations of the implied covenant of good faith and fair dealing, including, without limitation, the attorneys' fees and costs incurred by Plaza in enforcing its rights and as a consequence of Defendants' bad faith denial of coverage for the Claims.

96. Consequential damages, including payment of attorneys' fees and costs, were reasonably contemplated by Plaza and Defendants at the time they entered into the Policies.

## FOURTH CAUSE OF ACTION
(Deceptive Business Practices – General Business Law § 349 – Against all Defendants)

97. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

98. With regard to the Claims at issue, Defendants, at all times, have acted in bad faith and through a pattern of deceptive conduct that has injured Plaintiff.

99. The deceptive acts and practices by Defendants include, without limitation, paying claims submitted under the parties' well-established prior course of conduct and then denying 21

14

Claims at issue in this suit on the grounds that submission of the Claims did not comply with Policy provisions.

100. Upon information and belief, the Policies at issue are standard for the RRG's policyholders, and CastleLine/Altisource, on behalf of the RRG, is denying other claims made by other policyholders in the same manner as it has denied Plaza's Claims.

101. Defendants' conduct constitutes deceptive acts and practices in violation of General Business Law § 349.

102. Defendants' conduct was knowing, reckless, and willful.

103. By reason of the foregoing, Plaintiff has suffered damages.

104. By reason of the foregoing, Plaintiff is entitled to actual and treble damages, as well as pre- and post-judgment interest, and an award of its attorneys' fees and costs against Defendants, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
**(Tortious Interference with Contract – Against CastleLine and Altisource)**

105. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

106. The Policies constitute valid contracts between Plaza and the RRG.

107. CastleLine and Altisource had knowledge of the Policies: CastleLine issued the Policies on the RRG's behalf, Altisource is CastleLine's sole owner and managing member, the Policies are written on forms copyrighted by Altisource, and CastleLine's correspondence concerning the Claims under the Policies is on Altisource letterhead.

108. The RRG is obligated to pay in full, subject to the Policies' terms and conditions, Plaza's Claims under the Policies.

15

109. For purposes of this Cause of Action, CastleLine and Altisource are not the agents of the RRG.

110. CastleLine and Altisource willfully and purposefully induced the RRG materially to breach the Policies, for the sole benefit of CastleLine and Altisource and their owners or affiliates, including, without limitation, Altisource Parent, by refusing to provide coverage for Plaza's covered Claims. There is no justification for the RRG's breach of the Policies.

111. As a direct and proximate cause of the RRG's breach of the Policies, Plaza has suffered damages in an amount to be determined at trial.

112. CastleLine and Altisource's acts and omissions in this regard were malicious, fraudulent and/or grossly negligent, justifying the imposition of exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a. On the First Cause of Action, Plaintiff requests that the Court enter judgment against the RRG, awarding Plaintiff damages in an amount to be determined at trial, but not less than $75,000, plus consequential damages, attorneys' fees, costs, and pre- and post-judgment interest to the extent permitted by law;

b. On the Second Cause of Action, Plaintiff requests that the Court enter a declaratory judgment in favor of Plaintiff against the RRG, declaring that the RRG is required to pay Plaintiff up to the applicable limits of the Policies for the Claims;

c. On the Third Cause of Action, Plaintiff requests that the Court enter a judgment against Defendants, awarding Plaintiff damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, costs, and pre- and post-judgment interest to the extent permitted by law;

16

        d.       On the Fourth Cause of Action, Plaintiff requests that the Court award Plaintiff its actual damages in an amount to be determined at trial, plus consequential damages, punitive damages in an amount sufficient to prevent Defendants from engaging in similar deceptive conduct with other policyholders, attorneys' fees, costs, and pre- and post-judgment interest to the extent permitted by law.

        e.       On the Fifth Cause of Action, Plaintiff requests that the Court award Plaintiff damages against CastleLine and Altisource in an amount to be determined at trial, including exemplary damages, plus attorneys' fees, costs, and pre- and post-judgment interest.

        f.       Additionally, Plaintiff requests such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 22, 2024

COHEN ZIFFER FRENCHMAN & MCKENNA LLP

/s/ Alexander M. Sugzda
Alexander M. Sugzda
1325 Avenue of the Americas
New York, New York 10019
Tel: (212) 584-1890
Fax: (212) 584-1891
asugzda@cohenziffer.com

*Attorneys for Plaintiff Plaza Home Mortgage, Inc.*